UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

SVETLANA KLISHINA,

Plaintiff,

- against -

DETECTIVE RYAN CACKOWSKI, LIEUTENANT FRANCIS DEPALMA, CITY OF NEW YORK, and AMAZON WEB SERVICES, INC.,

Defendants.

-------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-5035 (PKC) (JAM)

PAMELA K. CHEN, United States District Judge:

Plaintiff brings this action *pro se* against New York City Police Department ("NYPD") Detective Ryan Cackowski and Lieutenant Francis DePalma (collectively, the "NYPD officers"), the City of New York, and Amazon Web Services, Inc. ("AWS") for alleged failures to adequately investigate, respond, and preserve evidence related to her claims that a third party defrauded her of cryptocurrency. Before the Court are Defendants' motions to dismiss each of Plaintiff's claims. For the reasons described below, the Court grants Defendants' motions and dismisses Plaintiff's Amended Complaint in its entirety. Plaintiff is granted thirty (30) days to file a motion for leave to amend, if she so chooses.

## BACKGROUND

Plaintiff alleges that she was the victim of a cryptocurrency fraud scheme operating through the web domains "Intellisoft.rest" and "Intellisoft.one" (the "Intellisoft Domains")[1] and Internet

[1] Based on publicly available information, these domains appear to be fraudulent websites that impersonate a real software business, IntelliSoft. *See* IntelliSoft, *IntelliSoft's Post*, LinkedIn, https://www.linkedin.com/posts/intellisoft_3_it-has-come-to-our-attention-that-a-fraudulent-activity-7255127098015576065-GNyg [https://perma.cc/7CUP-HY8L] (last visited Sep. 13, 2026) ("It has come to our attention that a fraudulent website, intellisoft.one, is falsely using

Protocol address 54.179.240.194 (the "IP Address"), resulting in "cryptocurrency losses." (Am. Compl., Dkt. 61, ¶¶ 12, 14.)

## I. Factual Background[2]

### A. Reports to NYPD

On March 7, 2025, Plaintiff caused "CYBERA"[3] to transmit a "certified cybercrime report" to the NYPD's 120th Precinct which included the IP Address associated with the Intellisoft Domains. (*Id.* ¶¶ 15–19.) On an unspecified day in June 2025, Plaintiff appeared in person at the NYPD's 120th Precinct and submitted a criminal complaint, bringing with her a copy of the certified CYBERA report and an accompanying "federal referral letter." (*Id.* ¶ 20.) NYPD Detective Cackowski was assigned to the matter, and Plaintiff emailed him the same CYBERA report and referral letter. (*Id.*) After receiving no substantive response for approximately one month, Plaintiff followed up with Detective Cackowski seeking a case update and confirmation of the assigned case number. (*Id.* ¶ 21.) Plaintiff alleges that the materials she submitted in-person and via email were not incorporated into the investigative file, were not referenced in case-closure

---

IntelliSoft's brand name and design to scam individuals and businesses. This site is not affiliated with IntelliSoft in any way, and we strongly advise against using it for any purposes.").

[2] The Court's recitation of the factual background is taken from Plaintiff's Amended Complaint. *See Hamilton v. Westchester County*, 3 F.4th 86, 90–91 (2d Cir. 2021) (explaining that in reviewing a complaint for failure to state a claim, the court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences," while disregarding "conclusory allegations or legal conclusions couched as factual allegations." (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020))).

[3] Based on publicly available information, "CYBERA is an AI-powered mule intelligence and scam response company helping financial institutions reduce risk exposure, protect customers from authorized payment fraud, and improve recovery outcomes," including by "support[ing] scam victims through structured case reporting, engagement with law enforcement, and collaboration with crypto tracing experts to maximize recovery chances." CYBERA Home Page, https://www.cybera.io/ [https://perma.cc/94KJ-5EEM] (last visited Sep. 13, 2026).

communications, and were not produced in response to Plaintiff's eventual New York Freedom of Information Law ("FOIL") request. (*Id.*) On July 16, 2025, NYPD Lieutenant Francis DePalma communicated the closure of the case to Plaintiff by email transmitted from a personal mobile device, rather than through an official archival NYPD communication or case-management system. (*Id.* ¶ 24.) The closure communication did not reference any documented investigative steps addressing the Intellisoft Domains and IP Address. (*Id.* ¶ 25.) After the case closure, Plaintiff submitted a FOIL request seeking intake and investigative records, including "DD-5" investigative reports, associated with the case. (*Id.* ¶ 26.) The NYPD did not produce those records or explain their absence. (*Id.*) Plaintiff claims that the DD-5 records generated by the NYPD after she brought her complaints to the officers were "material to establishing chain-of-custody, investigative acknowledgment, and referral pathways necessary to pursue civil remedies." (*Id.* ¶ 34.)

### B. Reports to AWS

On February 14, 2025, Plaintiff submitted an abuse report to AWS's Trust & Safety team identifying the same Intellisoft Domains and IP Address that she had reported to the NYPD. (*Id.* ¶ 22.)[4] Plaintiff alleges that the AWS abuse report generated an "internal abuse ticket" and "conveyed specific infrastructure identifiers sufficient to trigger internal review." (*Id.* ¶ 23.) Plaintiff notes that "[a]t the time of Plaintiff's abuse report, government agencies had publicly warned that 'pig-butchering' cryptocurrency fraud schemes commonly rely on cloud-hosted

[4] Plaintiff does not explicitly allege or explain AWS's relationship to the Intellisoft Domains, but AWS explains that its "only connection to Plaintiff's claimed cryptocurrency loss is its alleged role providing cloud services used by the Intellisoft Websites, just as AWS does for millions of other websites." (AWS's Mem. Supp. MTD, Dkt. 55, at 1.) Plaintiff appears to agree with this characterization of AWS's role. (*See* Pl.'s Opp'n, Dkt. 58, at 1–2 (describing AWS's "billing and provision of hosting resources" to the alleged third-party scammers, and AWS "continu[ing] to host the scam infrastructure without mitigation" after Plaintiff's complaints).)

infrastructure and that prompt preservation of technical records is critical to enable victim remediation and appropriate law-enforcement referral." (*Id.*)[5] Plaintiff alleges that, following her February 14, 2025 abuse report, AWS maintained exclusive control over the account, billing, and system logs associated with the IP Address at issue. (*Id.* ¶ 29.) Specifically, Plaintiff alleges that "AWS retained CloudTrail and related system logs reflecting access, configuration, and usage of the identified infrastructure," (*id.* ¶ 30), and "maintained billing and account metadata identifying the customer accounts associated with that infrastructure," (*id.* ¶ 31).

After receiving Plaintiff's February 2025 abuse report identifying specific fraud infrastructure, AWS did not impose a preservation hold on CloudTrail logs or related account records associated with the identified IP Address and Intellisoft Domains. (*Id.* ¶ 32.) Following submission of the abuse report, Plaintiff sent additional communications to AWS seeking information concerning the ownership and control of the Intellisoft Domains and infrastructure. (*Id.*) AWS did not provide any substantive response identifying the account holders or indicating that preservation measures had been implemented. (*Id.*)

By June 2025, within AWS's ordinary log-retention window following receipt of Plaintiff's February 14, 2025 abuse report, relevant logs were rotated or rendered unavailable pursuant to AWS's internal retention practices, despite Plaintiff identifying the fraud infrastructure and AWS retaining exclusive control over those records. (*Id.* ¶ 33.) Plaintiff claims that the "CloudTrail logs and AWS account records were material to identifying the accounts, access patterns, and control of the fraud infrastructure necessary to pursue civil recovery and injunctive relief." (*Id.* ¶ 35.)

---

[5] Plaintiff's Amended Complaint uses bold text throughout. Because of the frequency at which it does so, the Court has omitted all bold text from the parts of the Amended Complaint quoted herein.

## II. Procedural Background

Plaintiff commenced the present action on September 9, 2025, bringing claims against the NYPD Officers and the City of New York (collectively, the "City Defendants"), and AWS. (Compl., Dkt. 1.) On January 12, 2026, the City Defendants and AWS each filed fully briefed motions to dismiss. (*See* AWS MTD, Dkt. 54; AWS Reply, Dkt. 59; NYPD MTD, Dkt. 60-1; NYPD Reply, Dkt. 60-3; Pl.'s Opp'n, Dkt. 58.[6]) Two days later, Plaintiff filed an amended complaint in which she recited largely the same factual allegations but entirely revised the causes of action against the NYPD Officers and AWS. (Am. Compl., Dkt. 61.)

In response to Plaintiff filing her Amended Complaint, Defendants separately moved to strike the Amended Complaint as futile. (Dkts. 62, 63.) The Court denied these motions to strike given Plaintiff's *pro se* status and instead granted Defendants leave to supplement their motions to dismiss, to be followed by a response by Plaintiff and replies by Defendants. (01/30/2026 Dkt. Order.) The parties completed filing their supplemental submissions on March 6, 2026. (*See* NYPD Suppl., Dkt. 64; AWS Suppl., Dkt. 65; Pl.'s Suppl. Opp'n, Dkt. 66;[7] AWS Suppl. Reply, Dkt. 69; NYPD Suppl. Reply, Dkt. 70.) The motions to dismiss are now ripe for the Court.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[6] Plaintiff filed a consolidated opposition addressing both motions to dismiss. (Pl.'s Opp'n, Dkt. 58.)

[7] Plaintiff filed a consolidated opposition addressing both supplemental submissions. (Pl.'s Suppl. Opp'n, Dkt. 66.)

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In reviewing a complaint for failure to state a claim, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences," while disregarding "conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester County*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, so the Court reads a plaintiff's *pro se* complaint liberally and interprets it to raise the strongest arguments and claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) ("This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))). If "a liberal reading of the complaint gives any indication that a valid claim might be stated," "the [C]ourt should not dismiss without granting leave to amend at least once." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

## DISCUSSION

### I. Claims Against the NYPD Officers

Plaintiff brings a 42 U.S.C. § 1983 ("Section 1983") claim against the NYPD Officers. She specifically alleges a claim of denial of access to the courts. The Court also liberally construes her Amended Complaint to allege a due process violation.

#### A. Denial of Access to the Courts

Plaintiff claims that the NYPD Officers' "post-notice representations, non-archival closure, and failure to preserve intake records interfered with Plaintiff's access to lawful processes" in that they "frustrated Plaintiff's ability to pursue non-frivolous civil remedies and rendered those remedies ineffective." (Am. Compl., Dkt. 61, ¶¶ 39–40.)

Right-of-access claims "typically fall into one of two categories: (1) where a 'systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits,' such as lack of access to law libraries; and (2) where the litigant claims that 'they have irrevocably lost the ability to file a lawsuit, typically because of a massive government cover-up denying plaintiffs the ability to gather evidence.'" *Guerrero v. Douglas*, No. 22-CV-1217 (NGG) (RER), 2023 WL 5020646, at *3 (E.D.N.Y. Aug. 7, 2023) (quoting *Ponterio v. Kaye*, No. 06-CV-6289 (HB), 2007 WL 141053, at *9 (S.D.N.Y. Jan. 22, 2007)). Plaintiff appears to rest her claim on the latter category, which looks "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* (first quoting *Christopher v. Harbury*, 536 U.S. 403, 414 (2002); and then citing *Farella v. City of New York*, No. 05-CV-5711 (NRB), 2007 WL 2456886, at *6 (S.D.N.Y. Aug. 23, 2007)). In the Second Circuit, the "viability of backward-looking right-of-access claims is far from clear." *Id.* (citing *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012)).

"To the extent that they exist, [backward-looking] claims would be available only if the governmental action caused the plaintiff's suit to be dismissed as untimely, or if a judicial remedy was completely foreclosed by public officials' false statement or nondisclosure." *Id.* (quoting *Martinez v. City of New York*, 564 F. Supp. 3d 88, 101 (E.D.N.Y. 2021)). A backward-looking denial-of-access claim requires the plaintiff to "allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff." *Cancel v. City of New York*, No. 07-CV-4670 (RRM) (LB), 2010 WL 8965889, at *4 (E.D.N.Y. Mar. 3, 2010) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)). "Actual injury entails showing that the alleged shortcomings hindered efforts to pursue an arguable, nonfrivolous underlying claim." *Guerrero*, 2023 WL 5020646, at *4 (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). In essence, the plaintiff must have "effectively lost (or was severely hampered in) the ability to file a lawsuit." *Ponterio*, 2007 WL 141053, at *9. A plaintiff must also allege "the underlying cause of action which has been lost through the defendants' malfeasance, as well as any available remedy under the access claim and presently unique to it." *Guerrero*, 2023 WL 5020646, at *4 (citing *Christopher*, 536 U.S. at 417–18).

Here, Plaintiff fails to meet those requirements. As in *Guerrero*, "[t]he Amended Complaint does not identify any underlying cause of action that was lost or substantially hampered as a result of the [NYPD Officers'] actions. Nor does it propose a judicial remedy that may have been awarded to [Plaintiff] but was not otherwise available due to the [NYPD Officers'] actions. This alone warrants dismissal." *See* 2023 WL 5020646, at *5. The present case is also analogous to *Canell v. Auger*, No. 1:25-CV-13352 (RJW), 2026 WL 2211547 (E.D. Mich. July 31, 2026), in which the court dismissed claims against local police for failure to investigate cryptocurrency theft when plaintiff had "not pointed to any cause of action that was prevented . . . by any [of]

[d]efendants' actions." *Id.* at *4. Moreover, as in *Canell*, Plaintiff's claim here that the NYPD Officers' conduct "caused [her] to lose [her] 'recovery opportunities' and impaired [her] ability to preserve evidence," 2026 WL 2211547, at *4, is not enough. "[T]he Supreme Court's jurisprudence indicates that more is required. Plaintiff identifies neither an underlying cause of action that was lost nor the remedy that has become unavailable because of the Defendants' conduct. Accordingly, Plaintiff fails to plausibly allege that any of the Defendants foreclosed [her] access to the courts." *See id.* (citing *Christopher*, 536 U.S. at 405–06).

**B. Due Process Violation**

Plaintiff's original Complaint characterized her claims against the NYPD Officers as due process violations for "failing to investigate" and "closing a meritorious case." (Compl., Dkt. 1, at ECF[8] 4.) Though Plaintiff abandoned this claim after revising her cause of action and omitting this theory in her Amended Complaint, the Court liberally construes the Amended Complaint and thus considers this claim. Nonetheless, this claim is also without merit.

"[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even when such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (citing *Harris v. McRae*, 448 U.S. 297, 317–18 (1980)). As such, "[p]olice officers have no affirmative duty to provide public services or protection to individual citizens." *Kneital v. Rose*, No. 19-CV-3742 (PKC) (LB), 2019 WL 3804678, at *2 (E.D.N.Y. Aug. 13, 2019) (quoting *Morris v. City of New York*, No. 14-CV-1749 (JB) (LB), 2015 WL 1914906, at *5 (E.D.N.Y. Apr. 27, 2015)). To that end, police officers have the "discretion to conduct

[8] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

investigations and initiate arrests, and are charged with acting for the benefit of the public, not private citizens." *Wilson v. City of New York*, No. 18-CV-7301 (AMD) (LB), 2020 WL 5709200, at *5 (E.D.N.Y. Sep. 24, 2020) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005)); *see also Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) ("[T]here is no constitutional right to an adequate investigation, and therefore a claim for failure to investigate is not independently cognizable under Section 1983."). Accordingly, Plaintiff has no constitutional right to an investigation and cannot maintain an action against the NYPD Officers for their alleged failure to sufficiently investigate Plaintiff's complaints. *See Nachmenson v. NYPD 77th Precinct*, No. 17-CV-3637 (LDH) (RML), 2017 WL 4574478, at *2 (E.D.N.Y. Oct. 11, 2017) (holding that "any potential claims against the individual police officers would be dismissed for failure to state a claim" where "[p]laintiff claim[ed] that he called the police to report a break-in and that the officers at the 77th Precinct did not investigate the incident to his satisfaction").

## II. Claims Against City of New York

Plaintiff brings a *Monell* claim against the City of New York. She claims that "[t]he City of New York maintained policies, customs, or practices governing investigative record-handling and case closure that permitted post-notice closure of criminal complaints without preservation of intake records, and permitted non-archival communications to substitute for formal investigative documentation." (Am. Compl., Dkt. 61, ¶ 42.) She alleges, "[u]pon information and belief," that "the non-production of DD-5 intake and investigative records in response to Plaintiff's FOIL request reflected standardized NYPD record-handling and case-closure practices applicable to similarly situated complaints, rather than an isolated departure from established procedures." (*Id.* ¶ 43.) But Plaintiff's claim is fundamentally flawed in that, as discussed above, she has not alleged a constitutional violation—and even if she had, she would still fail to sufficiently allege a *Monell* claim.

A municipality can be liable under Section 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of their constitutional rights. *See Lozman v. Riviera Beach*, 585 U.S. 87, 95 (2018) ("It is well established that in a [Section] 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978))). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability [on a municipality], unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). "To satisfy this requirement, 'general and conclusory allegation[s]' of an unconstitutional policy or custom are insufficient." *Swinton v. Livingston County*, No. 21-1434, 2023 WL 2317838, at *1 (2d Cir. Mar. 2, 2023) (summary order) (alteration in original) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)); *id.* (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's Section 1983 claims pursuant to 28 U.S.C. § 1915(e)(2)(B)). "Rather, a plaintiff must identify either an 'express rule or regulation,' a practice that 'was so persistent or widespread as to [carry] the force of law,' or misconduct of 'subordinate employees' that 'was so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Id.* (quoting *Littlejohn*, 795 F.3d at 315). A plaintiff must also establish "a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (quoting *Tuttle*, 471 U.S. at 824 & n.8).

Here, while Plaintiff does assert that "[t]he City of New York maintained policies, customs, or practices" related to evidence preservation that resulted in her alleged harms, (Am. Compl., Dkt. 61, ¶ 42), "[t]he mere assertion . . . that a municipality has such a custom or policy is insufficient

in the absence of allegations of fact tending to support, at least circumstantially, such an inference," *Montero v. City of Yonkers*, 890 F.3d 386, 403–04 (2d Cir. 2018) (alteration in original) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993)); *see also Gross v. Johnson*, No. 24-CV-1722 (GRB) (AYS), 2025 WL 2722319, at *3, *8 (E.D.N.Y. June 30, 2025) (applying this rule even to a "liberally construed" *pro se* complaint); *Campbell v. Broome County*, 173 F.4th 36, 42–43 (2d Cir. 2026) (affirming district court's decision to dismiss *pro se* plaintiff's amended Section 1983 claims with respect to municipal defendants for failure to sufficiently plead policy or custom). Plaintiff does not allege any specific facts to support this assertion. (*See generally* Am. Compl., Dkt. 61, ¶¶ 42–45.) Therefore, Plaintiff's *Monell* claim against the City of New York must be dismissed. *See, e.g.*, *Bolling v. City of New York*, No. 18-CV-5406 (PGG) (RWL), 2020 WL 3002020, at *9 (S.D.N.Y. Feb. 3, 2020) (dismissing a *pro se* plaintiff's *Monell* claim based on the "conclusory allegations" "unsupported by specific facts" that "[i]t was the policy and/or custom [of] the [city] to inadequately and improperly investigate citizen complaints of policy misconduct [that] were instead tolerated by the [city]"), *report and recommendation adopted*, 2020 WL 1130709 (S.D.N.Y. Mar. 6, 2020).

### III. Claims Against AWS

Plaintiff brings a negligence claim against Defendant AWS. Specifically, she claims that, "[a]fter receiving specific abuse notice identifying fraud infrastructure and while retaining exclusive control over operational logs and account records material to foreseeable civil proceedings, AWS was required to exercise reasonable care under the circumstances in the handling and retention of those records in light of foreseeable civil proceedings." (Am. Compl., Dkt. 61, ¶ 47.) She further claims that "AWS breached that duty by failing to impose preservation measures and allowing system logs and account records to become unavailable after notice," which

"foreclose[ed] Plaintiff's ability to trace the fraud infrastructure and pursue recovery." (*Id.* ¶¶ 48–49.)

To state a negligence claim under New York law, Plaintiff must allege (1) a duty owed by AWS to her; (2) a breach of that duty; and (3) proximate causation between the breach and her alleged injuries. *See Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (citation omitted). The Court is aware of no New York case law recognizing that a negligence claim could be maintained under the circumstances alleged here; there is no established duty for a private entity such as AWS to preserve the records Plaintiff seeks. Instead, claims for failure to preserve evidence are typically brought as motions to compel and/or motions for sanctions. However, even in such cases, non-parties "typically [have] no duty to preserve evidence for use by others." *Rodo Inc. v. Guimaraes*, No. 22-CV-9736 (VSB) (VF), 2023 WL 8520426, at *2 (S.D.N.Y. 2023). A duty may arise "if the non-party is notified of the action and instructed to preserve certain evidence through, for instance, a document-preservation subpoena," *id.*, or through some other type of special relationship sufficient to create a duty, *see MetLife Auto & Home v. Joe Basil Chevrolet, Inc.*, 775 N.Y.S.2d 754, 755 (2004) (declining to recognize a cause of action for failure to preserve evidence where "there was no duty, court order, contract or special relationship"). Plaintiff does not allege anything to suggest that she either served AWS with a document-preservation subpoena or the like, or that there was any kind of special relationship—she does not allege that she was an AWS customer, that there was any contractual relationship with AWS, or any other facts that could give rise to a special relationship.

Even assuming *arguendo* that AWS did have a record-preservation duty, Plaintiff has not adequately pled any breach of a duty. She alleges only that "relevant logs were rotated or rendered unavailable pursuant to AWS's internal retention practices." (Am. Compl., Dkt. 61, ¶ 33.) But

this allegation only establishes that Plaintiff has thus far not been granted access to the evidence she seeks, not that AWS has failed to preserve it. Plaintiff also appears to fail to plead causation as Plaintiff's assertion that she "lost the opportunity to pursue civil remedies," (*id.* ¶ 53), is speculative and unsupported by allegations showing that AWS's conduct foreclosed any viable claim Plaintiff had available. *See In re Osborne*, No. 13-CV-8211 (CS), 2014 WL 2738558, at *4 (S.D.N.Y. 2014) (dismissing claim where alleged damages rested on nothing but "bald speculation as to future events").

In any event, Plaintiff's tort claim for failure to preserve evidence must fail because such a claim is not recognized under New York law. *See Ortega v. City of New York*, 845 N.Y.S.2d 773, 781 (2007) ("[W]e join the majority of jurisdictions to consider the issue and decline to recognize spoliation of evidence as an independent tort claim." (citation omitted)); *Farquharson v. Lafayette*, No. 19-CV-3446 (NSR), 2020 WL 1699985, at *12 (S.D.N.Y. 2020) ("New York does not recognize spoliation of evidence as an actionable tort."); *Poulos v. County of Warren*, No. 21-2656, 2023 WL 4004692, at *1 (2d Cir. June 15, 2023) (summary order) (affirming dismissal of spoliation claim because "there is no independent spoliation tort claim under New York Law").

## IV. Leave to Amend

Although "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once[,] . . . leave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citations omitted). Furthermore, where a plaintiff has already amended once and, when presented with arguments for dismissal, does not make any suggestions of new facts potentially capable of curing the complaint's deficiencies, a futility finding is particularly appropriate. *See Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020) (summary order).

Here, Plaintiff initially alleged several claims against each of Defendants in the Complaint, but two days after the parties completed briefing motions to dismiss, Plaintiff filed her Amended Complaint in which she largely maintained her factual allegations but substantially revised her causes of action. (*Compare* Compl., Dkt. 1, *with* Am. Compl., Dkt. 61.) Now, as discussed above, the Court has found that the claims Plaintiff brings in the Amended Complaint, even liberally construed, are fundamentally flawed and merit dismissal. Plaintiff has not merely failed to adequately plead specific facts; she complains of conduct that at bottom does not give rise to viable claims. Here, further amendment would be futile: Plaintiff has already had the opportunity to amend after Defendants filed fully briefed motions to dismiss, she did not significantly alter her factual allegations when amending, and at the core her claims are not actionable regardless of the precise facts alleged. Furthermore, nowhere in her opposition briefing does Plaintiff suggest any additional facts she could allege to cure the fundamental deficiencies that Defendants identified in their motions. *See Cuoco*, 222 F.3d at 112 (affirming denial of leave to amend on futility grounds where the plaintiff "ha[d] suggested no new material she wishes to plead" and "[t]he problem . . . [wa]s substantive").

Nonetheless, in light of her *pro se* status and because her amendments preceded any ruling on the sufficiency of her claims, the Court grants her one final opportunity to amend her complaint to address, if possible, the deficiencies identified in this Memorandum & Order. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) (reiterating that "a *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once"). If Plaintiff elects to amend, she must file a motion for leave to amend within thirty (30) days from the date of this Memorandum & Order and attach her proposed Second Amended Complaint to the motion. If Plaintiff's proposed Second Amended Complaint does not remedy the deficiencies described in

this Memorandum & Order, the Court will deny Plaintiff's motion for leave to amend, direct the Clerk of Court to enter judgment, and close this case. Plaintiff is granted thirty (30) days to file a motion for leave to amend, if she so chooses, to be accompanied by a copy of her proposed Second Amended Complaint.

**CONCLUSION**

For the reasons described herein, Defendants' motions to dismiss are granted, and Plaintiff's Amended Complaint is dismissed in its entirety. Plaintiff is granted thirty (30) days to file a motion for leave to amend, if she so chooses, to be accompanied by a copy of her proposed Second Amended Complaint.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2026
Brooklyn, New York